IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

TARA MATHENA, Individually and as
Personal Representative of the Estate
of PETER TYRRELL,                                                                      PLAINTIFF


v.                                                  Case No. 1:21-cv-00368-RTD


THE UNITED STATES OF AMERICA                                        DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court following a three-day bench trial on September 19–21, 2022.  Plaintiff, Tara Mathena, individually and as personal representative of the estate of Peter Tyrrell, filed her complaint against the Defendant, the United States, for medical negligence, wrongful death, and survival claims on March 12, 2021.  (ECF No. 2).  The parties stipulated to some exhibits received into evidence, and the Court overruled objections to certain exhibits that were also received evidence.  The Court heard the testimony of ten witnesses and then took the case under submission. This was a well tried and presented case by both sides.  Having considered the testimony of the witnesses, the exhibits received into evidence, and the post-trial briefs submitted by the parties, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

### I.       Findings of Fact

Peter Tyrrell was an Air Force veteran who served from June of 1966 until October of 1969.  After his military service, he worked as a security guard for various banks while being active in his Free Masons group and as a volunteer firefighter.  Mr. Tyrrell began living with his daughter, Tara Mathena, and her family in October of 2004.  By 2008, Mr. Tyrrell had retired from

his work as a security guard, and the Wilmington Veterans Affairs Medical Center ("VA Medical Center") became his primary healthcare provider.

For our purposes, Mr. Tyrrell's health history began in 2008 when he was diagnosed with non-Hodgkin's Lymphoma while being treated for shingles. After six rounds of chemotherapy and 30 days of radiation treatments, Mr. Tyrrell went into remission in 2009. From 2009 until August of 2018, Mr. Tyrrell had manageable kidney issues and problems with high blood sugar and Mr. Tyrrell stayed relatively active.

During August of 2018, Mr. Tyrrell went to the VA Medical Center's emergency room for a lingering cold. There, an x-ray revealed that Mr. Tyrrell had a "[s]mall modular density in the left lower chest," with a suggestion of a "nipple shadow marker for better evaluation." (JTX-1 pg. 952). Mr. Tyrrell and his daughter expressed concern over this due to Mr. Tyrrell's history of non-Hodgkin's Lymphoma. His physician, Dr. Rooparani Bhat, ordered a CT scan to check the abnormality. In September of 2018, Mr. Tyrrell received the results of the CT scan, which stated "THERE WERE NO IMPORTANT ABNORMALITIES […] There is an indeterminate small lesion in the liver. Will order ultrasound to get a better picture. Orders have been placed." (JTX-1 pg. 922).

In October of 2018, Dr. Bhat noted that Mrs. Mathena was concerned about the lesion that was detected by the x-ray and the CT scan and that Mrs. Mathena wanted Mr. Tyrrell to see an oncologist and maybe get a PET Scan. Dr. Bhat made a referral to oncology. Mr. Tyrrell met with an oncologist, Dr. Nirmala Nathan, on December 06, 2018, to discuss the results of the ultrasound ordered by Dr. Bhat. Dr. Chad Rabinowitz, the radiologist who reviewed the ultrasound, stated in the progress notes that "[t]here is likely fatty infiltration of liver versus underlying parenchymal disease. While this lesion is not characterized by ultrasound further evaluation is suggested with

MRI if possible and also contrast if possible." (JTX-1 pg. 898). Dr. Nathan informed Mr. Tyrrell that the VA Medical Center would perform radiological studies if the patient was symptomatic or had an abnormal physical exam and so her current plan would be to observe Mr. Tyrrell and follow up with him in six months.

While Mr. Tyrrell met again with Dr. Bhat in January of 2019, it was not until the summer of 2019 that he began to suffer complications. During the summer of 2019, Mr. Tyrrell was unable to maintain his normal activity level and had an overall lethargic demeanor. On August 25, 2019, Mrs. Mathena noted that her father did not look well and called an ambulance to take Mr. Tyrrell to the VA Medical Center's emergency room. Mr. Tyrrell was ultimately transferred from the Wilmington VA Medical Center to the VA Medical Center in Philadelphia as doctors sought to determine how best to treat him. In Philadelphia, doctors informed Mrs. Mathena that there were no treatment options for Mr. Tyrrell's condition and that he had only a matter of days left. Mr. Tyrrell was transferred backed to the Wilmington VA Medical Center, and died on September 17, 2019.

## II.   Conclusions of Law

Plaintiff's claims are brought pursuant to the Federal Tort Claims Act ("FTCA"). (ECF No. 2 ¶ 7), 28 U.S.C. § 2671 *et seq.* "The FTCA waives sovereign immunity and grants district courts jurisdiction over tort claims against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*'" *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 179 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003) (*quoting* 28 U.S.C. § 1346(b)(1)). All alleged acts or omissions here occurred in Delaware; thus, Delaware substantive law applies. *Id.*

## A. Medical Negligence

"Under Delaware law, when a party alleges medical negligence, that party must produce expert medical testimony that details: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." *Bonesmo v. Nemours Foundation*, 253 F.Supp.2d 801, 804 (D. Del. 2003) (internal quotations and citations omitted). Furthermore, 18 Del. C. § 6801(7) emphasizes that the "standard of skill and care required of every health care provider in rendering professional services of health care shall be the degree of the skill and care ordinarily employed in the same or similar field of medicine as defendant and the use of reasonable care and diligence." 18 Del. C. § 6801(7). The main issues to be resolved are (1) whether the VA Medical Center violated the appropriate standard of care, and, if they did, (2) whether that violation of the standard of care led to Mr. Tyrrell's death.

### 1. Did the VA Medical Center violate the appropriate standard of care?

Plaintiff contends that the VA Medical Center violated the appropriate standard of care by (1) not evaluating Mr. Tyrrell for secondary cancers as well as the recurrence of non-Hodgkin's Lymphoma; (2) not ordering an MRI with contrast; (3) not accurately describing the reason for the oncology consultation request; (4) Dr. Nathan not evaluating Mr. Tyrrell's liver lesion; and (5) not properly updating Mr. Tyrrell's active problem list.

Dr. Bhat would normally be responsible for evaluating Mr. Tyrrell for secondary cancers and for accurately describing the reason for the oncology referral. Dr. Bhat testified that she referred Mr. Tyrrell to the oncologist because of his history of non-Hodgkin's lymphoma. She stated that she did not feel the need to further detail the reason for the referral, because it was Dr. Nathan's responsibility to review Mr. Tyrrell's records before meeting with him. Plaintiff's oncology expert agreed that Dr. Bhat's failure to include the liver lesion in the consultation form

4

did not relieve Dr. Nathan from her responsibility to review Mr. Tyrrell's records, which otherwise included information about the lesion.  Furthermore, both primary care physician experts testified that Dr. Bhat had discretion as to how she should handle her patients and as to how to ensure that Mr. Tyrrell saw the proper specialists.  The Court therefore finds that Dr. Bhat did not fail to meet the standard of care by failing to include the liver lesion in her consultation request.

Plaintiff contends that either Dr. Nathan or Dr. Bhat should have ordered an MRI.  Dr. Bhat has a great deal of discretion as a primary care physician in how she treats her patients, and it was not a violation of the appropriate standard of care to rely upon Dr. Nathan's decisions as a specialist regarding what follow-up tests to order (or not).  Thus, the issue becomes whether Dr. Nathan violated the appropriate standard of care by not ordering the MRI.  Dr. Rabinowitz, who noted the liver lesion on Mr. Tyrrell's ultrasound, testified that he had mentioned performing an MRI as a possible way of finding out more about the lesion. But he did not think an MRI needed to be done immediately.  Instead, Dr. Rabinowitz stated that he would have called the appropriate doctor if he felt that an MRI was needed urgently, and he did not do so in Mr. Tyrrell's case.

Dr. Nathan testified that she decided against ordering an MRI due to Mr. Tyrrell's kidney issues, and Defendant's oncologist expert agreed with this decision.  Plaintiff argued, however, that the severity of Mr. Tyrrell's kidney issues should have weighed in favor of ordering the MRI to learn more about the liver lesion. Plaintiff's oncology expert acknowledged that there were risks with performing an MRI due to Mr. Tyrrell's underlying kidney issues.  The Court finds that Dr. Nathan did not violate the applicable standard of care in failing to order an MRI.

Plaintiff also contends that Dr. Nathan did not properly evaluate Mr. Tyrrell's liver lesion as part of her decision-making process, but the evidence indicates that Dr. Nathan did consider the lesion at Mr. Tyrrell's December 2018 appointment.  Dr. Nathan set up a plan to monitor Mr.

Tyrrell with a follow-up appointment set for six months later.  Dr. Nathan explained to Mr. Tyrrell that she would order additional scans if he began to exhibit certain symptoms.  Dr. Nathan also ordered a comprehensive metabolic profile ("CMB") test for Mr. Tyrrell to specifically test his liver function.  Dr. Nathan did evaluate Mr. Tyrrell and had a plan put in place to monitor him and his liver function.

Lastly, Plaintiff contends that the appropriate standard of care was not followed because the liver lesion was not included on Mr. Tyrrell's active problem list.  Dr. Bhat and Dr. Nathan both testified that they were aware of the liver lesion and placing it on the active problem list would not inform them of anything they were not already aware of.  As Plaintiff's expert oncologist testified, Dr. Nathan should review Mr. Tyrrell's records, so regardless of whether the liver lesion is listed on the active problem list or not, Mr. Tyrrell's liver lesion would be observed by the appropriate people.

For all of the above reasons, the court finds that the VA Medical Center did not violate the appropriate standard of care.

### 2. If there was a violation of the standard of care, did it lead to Mr. Tyrrell's death?

Even if the appropriate standard of care was violated, Plaintiff cannot prevail on her claim of medical negligence without satisfying her burden to demonstrate "a causal link between the deviation" from the appropriate standard of care and Mr. Tyrrell's death.  *See Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001).

Plaintiff contends that Mr. Tyrrell had hepatocellular carcinoma ("HCC").  HCC is the most common type of primary liver cancer in adults and the third leading cause of cancer-related deaths worldwide.  Defendant, on the other hand, contends that Mr. Tyrrell had hepatoid

adenocarcinoma ("HAC") (or at the very least did not have HCC) and was in too late a stage of his cancer for treatments to be effective.  HAC is a very rare form of cancer, with only about 40-50 documented cases in the United States each year.  Both oncology experts agreed that if Mr. Tyrrell had HAC it would have been incurable once it had metastasized to the liver.

Dr. Veran Ushuplich, the pathologist who examined Mr. Tyrrell's tissue in early September of 2019, wrote in his progress notes that there were positive markers indicating that Mr. Tyrrell could have HCC, but emphasized that there are other markers in Mr. Tyrrell's tissue that strongly argue against it being HCC and instead pointed towards it being HAC.  Furthermore, while a lab report from The Joint Pathology Center shows that Dr. Uschuplich and Dr. Guanghua Wang disagreed on the source of the lesion, it is clear from these reports that both doctors believed that the lesion originated outside of the liver and that the lab tests were indicating that it was not HCC.

The Court finds that Plaintiff has failed to meet her burden of demonstrating a causal link between any of her alleged violations of the standard of care and Mr. Tyrrell's death.  Mr. Tyrrell did not receive a specific diagnosis, and the evidence points toward the possibility—if not the probability—that Mr. Tyrrell suffered from an aggressive form of cancer that would have limited or precluded treatment options regardless of whether the VA Medical Center would have acted in the way that Plaintiff advocates.

**B.  Wrongful Death and Survival Claim**

Since Plaintiff has failed on their medical negligence claim, their wrongful death and survival claim also fail.  10 Del. C. § 3721(5) ("'Wrongful act' means an act, *neglect* or default") (emphasis added); 10 Del. C. § 3704 ("No action brought to recover damages for injuries to the person by *negligence* or default shall abate by reason of the death of the plaintiff,") (emphasis added).

**III.  Conclusion**

The Court grants judgment in favor of Defendant. Judgment will be entered by separate filing.

IT IS SO ORDERED this 7th day of November, 2022.

/s/*Robert T. Dawson*

**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**